The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. An index of records marked as stipulated exhibit 1 was received into evidence.
***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff testified that on July 17, 1997 he was standing on the trailer between the headboard and the load on his truck. He was attempting to strap the load when the strap snapped and struck him in the mouth breaking his front tooth. He further testified that he fell off the truck and landed on his buttocks. Following this incident, plaintiff testified that his legs and hips started to bother him.
2. Plaintiff testified that on the day of the alleged fall he reported this incident to Sears Bugg, the dispatcher with Eastern Motor Lines. Mr. Bugg did not remember such a report being made to him.
3. Plaintiff testified that he also reported the above described incident to workers who unloaded his truck the next day. Testimony from these workers was not offered as evidence to corroborate plaintiff's claim that he had reported such an incident and received assistance from these workers the day following an alleged fall.
4. Plaintiff testified that during the time period following the alleged fall he sought to self-medicate himself with Ibuprofen. He testified that sometime between the alleged fall and July 30, 1997, he described the fall to his druggist who recommended that he utilize this pain medication. Plaintiff did not offer testimony from his druggist as evidence to corroborate that he had reported a work-related incident to him involving a fall.
5. From July 17, 1997 to September 8, 1997, plaintiff did not seek to obtain any medical treatment from a physician for his lower back.
6. On September 8, 1997, plaintiff sought medical treatment for his lower back from Dr. Gross. Plaintiff reported to Dr. Gross that he had experienced a sudden onset of low back pain when bending over making his bed twenty-four hours earlier. Plaintiff reported that he had injured his back in the past. He did not report a work-related incident that took place during July 1997. During his testimony, plaintiff denied reporting to Dr. Gross that he had injured his back twenty-four hours prior to this visit. During his testimony, plaintiff denied reporting to Dr. Gross that he had reported a history of back pain.
7. On September 9, 1997, plaintiff sought medical treatment for an acute onset of low back pain at the Hammer Chiropractic Center. Plaintiff reported to chiropractor Jeffrey Keller that the onset of this acute back pain took place after digging. The medical record prepared at that time did not include any notation that the plaintiff had been having intermittent lower back pain since a fall in July.
8. During the deposition of chiropractor Keller on October 8, 1998, counsel for the defendants inquired as to whether the plaintiff gave him any medical history or whether he had taken a medical history from the plaintiff. Dr. Keller responded that he had taken a history and offered to read the medical record. He read the entire medical record in his possession into the record at that time. The medical record that Dr. Keller read included the following statement that did not appear on the record as it had been completed on or about September 9, 1997: "He (plaintiff) had been having pain off and on since the fall earlier in the summer in July." This sentence did not include any information that would indicate that a modification of the medical record had taken place such as initials of the author and a date that it was written. At that time, chiropractor Keller did not offer to explain that any modification of the September 9, 1997 medical record had taken place. Later in the direct examination of chiropractor Keller, counsel for the defendants presented a September 9, 1997 medical record marked as defendant's exhibit 1 to chiropractor Keller. The document that Dr. Keller read into the record was identical on the first page to defendant's exhibit 1 with the exception that defendant's exhibit 1 did not include any statement about a fall that had taken place in July. Dr. Keller sought to explain the discrepancy by claiming that he had made this alteration after reviewing Dr. Whitmer's medical records sometime after October 3, 1997.
9. Plaintiff did not receive any additional treatment from chiropractor Keller of the Hammer Chiropractic Center after September 11, 1997. No explanation was offered as to why chiropractor Keller would have been in possession of Dr. Whitmer's record the following month.
10. On direct-examination, counsel for the plaintiff questioned the plaintiff as to whether he had given a history to chiropractor Keller and had told him what had happened. Plaintiff answered that he had described what had happened to him to chiropractor Keller. At that point in his testimony, the plaintiff had only testified about a July 17, 1997 work-related fall. Counsel for the plaintiff then specifically inquired as to whether plaintiff had a recollection that he had told the doctor anything about a fall. Plaintiff responded slowly stating "somewhat", then he paused stating, "a little bit", and then he explained "that he really didn't get into any major thing because he knew I was in major pain. . . ." Chiropractor Keller testified that he first became aware of the fall after reviewing Dr. Whitmer's records. He explained that he did not obtain any history about the chronicity of plaintiff's problem because the plaintiff was in acute distress. Dr. Keller and plaintiff's testimony are similar in that both offer to explain the limited history recorded by Dr. Keller because of a rush to provide treatment. However, their testimony differs on the key point as to how Dr. Keller became aware of an alleged work-related fall.
11. On September 16, 1997, plaintiff sought emergency medical treatment for his lower back at Nash General Hospital. Plaintiff was hospitalized after an MRI revealed that plaintiff had a disc herniation at the L5-S1 level. The September 16, 1997 Nash General Hospital medical record revealed that plaintiff reported that one week prior to his admission he had had an acute onset of lower back pain. The record did not include any report of a work related injury in July 1997.
12. On September 18, 1997, Dr. Whitmer performed a lumbar laminectomy with a diskectomy on plaintiff's lower back. On the September 22, 1997 discharge note, Dr. Whitmer recorded that plaintiff had reported that about a week or two prior to admission he had a work injury when he twisted his back.
13. Plaintiff did not have any general health insurance that would cover the expenses of the surgery that he received.
14. On October 3, 1997, plaintiff first reported to Dr. Whitmer that his back problems allegedly began in July when he was tying down a load on the back of his truck. Plaintiff's report at this time was the first time that he had reported to any of his healthcare providers that he had sustained a work-related injury involving a fall during July 1997.
15. Sometime after October 3, 1997, chiropractor Keller altered the September 9, 1997 record in a attempt to assist the plaintiff in obtaining workers' compensation benefits by creating a record to falsely corroborate plaintiff's worker's compensation claim.
16. Based upon the lack of an unaltered medical record that describes a work-related injury during July 1997 prior to the September 18, 1997 surgery, the lack of any disinterested witnesses that corroborate that plaintiff had reported a fall to anyone during the months of July and August of 1997, the discrepancy between plaintiff's in court testimony denying that he had reported prior back problems and that he had reported back pain after bending over to make his bed the day prior to visiting Dr. Gross and Dr. Gross's medical records that record that such reports took place, the alteration of the September 9, 1997 medical record by chiropractor Keller, the discrepancy between plaintiff's claim that he reported a fall to chiropractor Keller and chiropractor Keller's deposition testimony that he became aware of the alleged work-related fall after reviewing Dr. Whitmer's records, the length of time that plaintiff took before he first sought medical treatment and finally because of the undersigned's own observation of the plaintiff's in court testimony as well as a review of the tape recording of plaintiff's testimony, the undersigned is unable to reconcile the inconsistencies in the record to support a finding that plaintiff was credible with regard to his claim that he sustained a work-related injury while employed with the defendant-employer.
17. To the extent that plaintiff's sister corroborates plaintiff's testimony that he sustained a work-related injury, the undersigned gives little weight to her testimony given the above described discrepancies in the record as well as her own personal interest in the outcome of this matter.
***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to show by the greater weight of the evidence that he sustained a work-related injury on July 17, 1997 while employed with the defendant-employer. October N.C.G.S. § 97-2(6).
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim is HEREBY DENIED.
2. Defendants shall pay an expert witness fee in the amount of $235.00 to Dr. Whitmer.
This the ___ day of August 1999.
 S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN JR. CHAIRMAN
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
DCS/bjp